Case 2:22-cr-00591-DLR   Document 93   Filed 03/27/24   Page 1 of 8

*LAW OFFICES OF MICHAEL J. BRESNEHAN, P.C.*
Michael J. Bresnehan, Esquire
1761 E. McNair Drive, Ste. 101
Tempe, Arizona 85283-5002
(480) 345-7032
State Bar No.: 009415
mbresnehan@hotmail.com
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | Case No.  2:22-cr-00591-DLR-3 |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S OBJECTIONS |
| vs. | ) | TO THE PRESENTENCE |
| | ) | INVESTIGATION REPORT |
| Cassandra Gonzalez, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW the Defendant, Cassandra Gonzalez, by and through the undersigned attorney, and hereby objects to the Presentence Investigation Report ("PSR"), all as set forth in the accompanying memorandum of points and authorities.

RESPECTFULLY SUBMITTED this 27th day of March, 2024, by

s/  Michael J. Bresnehan
Attorney for Defendant

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

Page 14, ¶ 47:  Ms. Gonzalez objects to the proposed four-offense-level increase under § 2K2.1(b)(6)(A).  At the time Ms. Gonzalez purchased the firearms for Jose Encinas-Delgado, she did not know what Encinas-Delgado was going to do with those specific guns.  Moreover, she was not told that any of the guns she purchased would be sent out of country.  She eventually came to suspect that Encinas-Delgado was exporting at least some of the guns purchased by the straw buyers, after overhearing a phone conversation between Encinas-Delgado and someone (apparently) located in Mexico.  On page 13, ¶ 35, the PSR writer stated: "During her interview [by ATF agents], Cassandra Gonzalez recanted her previous statements of her [lack of] knowledge of what Encinas-Delgado did with the firearms. She admitted she knew Encinas-Delgado *would be* transporting the firearms to Culiacan, Sinaloa, Mexico".  This mischaracterizes what the interviewing agent's report says.  In that report, the agent says:  "Cassandra stated she had no knowledge of what Encinas did with the firearms or where he would take them.  Cassandra then recanted her statement and stated the firearms *were taken* to Culiacan, Mexico but does not know how they were transported.  Cassandra advised the ATF SAs she heard Encinas on the phone saying, "aqui tengo los juguetes se van a ir para ya." (*Spanish Translation*: I have the toys here that are ready to go over there)"  The agent's report was ambiguous as to *when* Ms. Gonzalez came to suspect that at least some of the guns purchased by the straw buyers were sent to Mexico.  Moreover, Ms. Gonzalez did not profess to know which of the guns purchased by the several straw buyers actually made their way to Mexico.

The PSR writer repeated his mischaracterization of that part of the agent's report in his (the P.O.'s) "Justification" section of the PSR on page 21.

Section 2K2.1(b)(6)(A) clearly requires "knowledge, intent, or reason to believe it [the guns] would be transported out of the United States" at the time of the

transfer of the firearms, rather than at some point in time *after* the transfer.  Any judicial finding that Ms. Gonzalez knew, *prior to purchasing the guns and handing them off*, that the *specific* guns she purchased would be going out of country would need to be supported by clear and convincing evidence, given the overall impact four offense levels would have on the final prison sentencing range.  The evidence supporting the Probation Department's proposed four-offense-level increase under § 2K2.1(b)(6)(A) does not meet the preponderance standard, let alone the clear and convincing standard.

Page 14, ¶ 48:  Ms. Gonzalez objects to the proposed characterization of her role in the offense as "average".  Ms. Gonzalez was a minor participant in the gun purchasing scheme conducted by Encinas-Delgado and others.  A reduction of between two and four offense levels would be appropriate under § 3B1.2.

Section 3B1.2, Application Note 3, reads as follows:

    3.   Applicability of Adjustment.—

        (A)    Substantially Less Culpable than Average Participant.—This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity.

            A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline.

Likewise, a defendant who is accountable under §1B1.3 for a loss amount under §2B1.1 (Theft, Property Destruction, and Fraud) that greatly exceeds the defendant's personal gain from a fraud offense or who had limited knowledge of the scope of the scheme may receive an adjustment under this guideline. For example, a defendant in a health care fraud scheme, whose participation in the scheme was limited to serving as a nominee owner and who received little personal gain relative to the loss amount, may receive an adjustment under this guideline.

(B)   Conviction of Significantly Less Serious Offense.—If a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted because such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense. For example, if a defendant whose actual conduct involved a minimal role in the distribution of 25 grams of cocaine (an offense having a Chapter Two offense level of level 12 under §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy)) is convicted of simple possession of cocaine (an offense having a Chapter Two offense level of level 6 under §2D2.1 (Unlawful Possession; Attempt or Conspiracy)), no reduction for a mitigating role is warranted because the defendant is not substantially less culpable than a defendant whose only conduct involved the simple possession of cocaine.

(C)   Fact-Based Determination.—The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.

In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:

(i)   the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)   the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)   the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)   the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

*For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.*

*The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinati*ve. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

4.   Minimal Participant.—Subsection (a) applies to a defendant described in Application Note 3(A) who plays a minimal role in the criminal activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise

and of the activities of others is indicative of a role as minimal participant.

5. Minor Participant.—Subsection (b) applies to a defendant described in Application Note 3(A) who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal.

6. Application of Role Adjustment in Certain Drug Cases.—In a case in which the court applied §2D1.1 and the defendant's base offense level under that guideline was reduced by operation of the maximum base offense level in §2D1.1(a)(5), the court also shall apply the appropriate adjustment under this guideline. (emphasis added)

The investigative reports suggest that Ms. Gonzalez played a brief and otherwise limited role in a larger on-going scheme to purchase guns illegally.

Under the Guidelines, Ms. Gonzalez was deemed to be accountable under § 1B1.3 (Relevant Conduct) only for the guns she purchased.

There was no evidence that Ms. Gonzalez had any more than a superficial knowledge of the structure and/or operation of the people/entity behind the illegal gun purchasing scheme. Clearly, she knew her sister (Alejandra Gonzalez) and Hernandez-Chagoya were also conducting gun purchases as straw buyers at Encinas-Delgado's direction. She eventually came to suspect that some of the guns were being sent to Mexico, after overhearing a phone conversation between Encinas-Delgado and someone (apparently) located in Mexico.

Ms. Gonzalez had no proprietary interest in the larger scheme. She did not participate in the planning or organizing of the gun purchases, or the disposition of the guns. She was persuaded to purchase the first couple of guns as a favor to Encinas-Delgado. Mr. Encinas then pressured her to buy more guns, promising her money to do so. She ended up purchasing fourteen more guns, before refusing to purchase any more. She was told what gun stores to go to, and what guns to buy. She was given the money needed to buy the guns. She then handed off the guns to persons

designated by Encinas-Delgado. All of her gun purchases occurred over a brief (32-day) period, after which she refused to continue. In fact, she stopped purchasing guns a full month before her arrest.

On these facts, Ms. Gonzalez is, arguably, entitled to a reduction of between two and four offense levels for her limited role in a larger illegal gun purchasing scheme.

Should the Court agree that Ms. Gonzalez played a minimal role in the gun purchasing scheme, and that there is insufficient evidence to support the notion that Ms. Gonzalez had *prior* knowledge that one or more of the guns she purchased were going out of country, the revised Guidelines score would be as follows:

| | |
|---|---|
| Base Offense Level | 12 |
| Specific Offense Characteristics (at least 9, but less than 24 guns) | + 4 |
| Minimal Role | - 4 |
| Acceptance of Responsibility | - 2 |
| Total Offense Level | 10 |
| Criminal History Category I | |
| Guidelines Prison Range (Zone B) | 6 – 12 months |
| Probation – Eligible Under Guidelines | |

RESPECTFULLY SUBMITTED this 27th day of March, 2024, by

s/  Michael J. Bresnehan
Attorney for Defendant

**CERTIFICATE OF SERVICE**

X  I hereby certify that on March 27, 2024, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Hon. Douglas L. Rayes
U.S. District Court Judge

Addison B. Santome, Esq.
Asst. U.S. Attorney

X  I hereby certify that on March 27, 2024, I served the attached document by Mail on the following, who is not a registered participant of the ECF System:

Cassandra Gonzalez.
Defendant


s/  Michael J. Bresnehan